UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID ALLEN BENTEL                               CIVIL ACTION

VERSUS                                           NO. 10-4392-DEK

N. ORLEANS CRIMINAL
SHERIFF'S OFFICE, ET AL.

### ORDER AND REASONS

Plaintiff, David Allen Bentel, filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983. He named as defendants the Orleans Parish Sheriff's Office, Sheriff Marlin Gusman, and Dr. Gautreaux. In this lawsuit, plaintiff claimed that he received inadequate medical care while incarcerated within the Orleans Parish Prison system. Specifically, he stated his claim as follows:

> I requested medical attention to my knees on 5/27/2010 then again on 7/29/2010 again on 9/15/2010 and to date no care to my knees. In 2004 Department of Corrections found out that I have degenerate knees and need knee replacement surgery. Nothing has been done, no x-rays or steady treatment. The doctor and sheriff are responsible for my medical needs that were not provided.[1]

---

[1] Rec. Doc. 7, p. 3.

On February 11, 2011, United States District Judge Martin L.C. Feldman dismissed the claim against the Orleans Parish Sheriff's Office.[2] The remaining parties then consented to the jurisdiction of the undersigned United States Magistrate Judge.[3]

Sheriff Gusman and Dr. Gautreaux have now filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56.[4] Plaintiff has opposed that motion.[5]

### I.  Summary Judgment Standards

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own

---

[2]   Rec. Doc. 17.

[3]   Rec. Doc. 19.

[4]   Rec. Doc. 22.

[5]   Rec. Doc. 24.

affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

## II. Analysis

Before analyzing the particulars of plaintiff's claims, the Court initially notes what the federal constitution does *not* require with respect to the medical care of inmates.

First, the federal constitution does not require that inmates receive optimal care. The fact that an inmate's medical treatment "may not have been the best money could buy" is simply insufficient to establish a federal violation. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); see also Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978).

Second, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007);

Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, claims of negligence or malpractice present issues of state law for state courts, not federal constitutional issues for a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Cerna, 2004 WL 42602, at *2.

On the contrary, an inmate's federal constitutional right to medical care is extremely limited. Specifically, the federal constitutional rights of an incarcerated person, whether he is a pretrial detainee or a convicted prisoner, are violated only if his serious medical needs are met with *deliberate indifference* on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). On that point, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In their motion, defendants argue that plaintiff's medical records disprove any allegation of deliberate indifference. Those records do in fact reflect that plaintiff received repeated medical

4

attention and treatment for his knee problem both before and after this lawsuit was filed. For example:

- On January 27, 2010, plaintiff was seen in the jail medical department for his complaints of knee pain. The exam noted that plaintiff was in no apparent distress, was ambulating without difficulty, and had no swelling to his knees. However, he was prescribed Ultram for pain.[6]

- On March 29, 2010, a medical intake screening was performed at the jail. During that screening, plaintiff's arthritis was noted, although he stated that he felt "OK."[7] A health assessment by the jail doctor completed shortly noted the same findings.[8]

- On May 28, 2010, plaintiff submitted a sick call request complaining of various medical problems, including his knee condition. On that same date, a nurse noted that plaintiff was not in apparent distress but nevertheless referred him to the jail doctor.[9]

---

[6] Rec. Doc. 22-4, p. 17.

[7] Rec. Doc. 22-4, pp. 8-10.

[8] Rec. Doc. 22-4, pp. 2-7.

[9] Rec. Doc. 22-4, p. 15.

- On June 4, 2010, plaintiff was examined by the jail doctor. The doctor noted degenerative joint disease and knee pain, issued a prescription for Naprosyn for pain, and scheduled a follow-up visit.[10]

- On July 6, 2010, plaintiff was seen by a nurse practitioner in the jail medical department. Plaintiff complained of bilateral lower extremity edema and knee pain. While noting that plaintiff was in no apparent distress, the nurse did in fact observe edema of the lower extremities. Plaintiff's prescription for Naprosyn was discontinued, and Indocin was substituted for pain. He was also prescribed a bottom bunk and Lasix for water retention, and another follow-up examination was scheduled.[11]

- On July 16, 2010, plaintiff submitted a sick call request complaining that his legs and feet were swollen. On July 22, a nurse noted "gross edema" to both lower legs and referred plaintiff to the jail doctor.[12]

- On August 15, 2010, plaintiff was seen in the jail medical department for his complaints of leg pain and edema. The exam revealed that he was in no apparent distress and was ambulating without difficulty. His dosage of Lasix was increased and his prescription for Indocin was renewed.[13]

---

[10]  Rec. Doc. 22-4, p. 24.

[11]  Rec. Doc. 22-4, p. 23.

[12]  Rec. Doc. 22-4, p. 14.

[13]  Rec. Doc. 22-4, p. 22.

- On September 12, 2010, plaintiff submitted a sick call request in which he requested pain medication for his knees. On September 13, he was examined by a nurse who noted that plaintiff was ambulating without difficulty and was in no apparent distress; however, the nurse referred plaintiff to the jail doctor.[14]

- On September 16, 2010, plaintiff was seen in the jail medical department for a follow-up examination regarding the edema.[15]

- On October 15, 2010, plaintiff submitted a sick call request in which he again requested pain medication for his knees. On October 21, he was examined by a nurse who noted that plaintiff was ambulating without difficulty; however, the nurse referred plaintiff to the jail doctor.[16]

- On November 5, 2010, plaintiff was seen in the jail medical department for his complaints of knee pain. He was prescribed Ibuprofen, and a knee brace was ordered.[17]

- On December 15, 2010, plaintiff was seen in the jail medical department for various complaints, including knee pain. The exam noted that plaintiff was ambulating without difficulty and had no swelling or redness to his knees.

---

[14] Rec. Doc. 22-4, p. 13.

[15] Rec. Doc. 22-4, p. 21.

[16] Rec. Doc. 22-4, p. 12.

[17] Rec. Doc. 22-4, p. 20.

>However, he was prescribed Salsalate for pain, and a new, large knee brace was ordered for him.[18]

Clearly, the medical records in the instant case show that plaintiff was not refused treatment, his medical complaints were not ignored, and he was not intentionally treated incorrectly. Those records instead reflect that he was repeatedly seen by the jail's medical staff and treated with medications. Accordingly, the records disprove his allegation that his medical needs were met with deliberate indifference. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").[19]

It must further be noted that the fact that plaintiff's knee pain was not ultimately resolved by the medical treatment does not prove otherwise. Federal constitutional protections are not violated simply because an inmate's medical treatment was unsuccessful or because pain persisted despite treatment. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006); Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010).

The Court also notes that, in plaintiff's opposition to the motion for summary judgment, he makes clear that he was dissatisfied with and disagreed with his medical treatment, especially the

---

[18] Rec. Doc. 22-4, p. 18.

[19] Because plaintiff cannot prove deliberate indifference in this case, the Court need not determine whether his knee problem actually constituted a serious medical need as required to support a federal constitutional claim.

8

decisions not to conduct additional diagnostic tests and not to send him to see outside specialists. However, that does not make his claims actionable. Absent exceptional circumstances, a prisoner's disagreement with his medical treatment simply does not constitute deliberate indifference. Gobert, 463 F.3d at 346. Moreover, "the question of whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1976). The same is true regarding the decision to treat an inmate in the jail medical department rather than to send him to outside medical providers or specialists. See Alfred v. Texas Department of Criminal Justice, 80 Fed. App'x 926, 927-28 (5th Cir. 2003); see also Fowler v. Hodge, 94 Fed. App'x 710, 713 (10th Cir. 2004); Morrison v. Gusman, Civ. Action No. 10-217, 2010 WL 724173, at *4 (E.D. La. Feb. 22, 2010). Generally, such matters of professional medical judgment are better left to the medical expertise of physicians rather than to the legal expertise of judges. Federal courts are therefore loath to second-guess such medical decisions in federal civil rights actions. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action."). Based on the evidence showing that plaintiff received continued medical care, as well as on the complete absence of contrary evidence, there is no basis whatsoever to engage in such second-guessing in the instant case.

In summary, the determinative issue here is not whether the medical treatment plaintiff received was subpar in some respect, whether his medical problems persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether his serious medical needs were met with *deliberate indifference*. Because it is evident that there was no deliberate indifference in this case, defendants are entitled to judgment as a matter of law.

Accordingly,

**IT IS ORDERED** that the motion for summary judgment is **GRANTED** and that plaintiff's remaining claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this twenty-fifth day of July, 2011.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**